Filed 7/18/16  In re Mendoza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re SAUL BARCENAS MENDOZA<br><br>on<br><br>Habeas Corpus. | D069374<br><br>(San Diego County<br>Super. Ct. No. SCD245944) |

PETITION for writ of habeas corpus challenging a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Relief granted.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy Public Defender, Troy A. Britt, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, and Christopher P. Beesley, Deputy Attorney General, for Real Party in Interest.

Petitioner Saul Barcenas Mendoza filed a petition for writ of habeas corpus challenging a judgment that imposed a consecutive four-year prison term enhancement

under Health and Safety Code section 11353.6, subdivision (b),[1] for committing an eligible drug offense (i.e., § 11378 possession for sale of methamphetamine) within 1,000 feet of a public or private elementary, vocational, junior high, or high school. His petition contends the section 11353.6, subdivision (b), enhancement must be reversed because he was denied his constitutional right to effective assistance of counsel. He argues: (1) his trial counsel performed deficiently by not requesting an instruction on the section 11353.6, subdivision (b), allegation that correctly informed the jury of subdivision (g)'s requirement that, for the subdivision (b) allegation to be found true, his eligible offense must have been committed either on public property or in a "public area" of private property within 1,000 feet of a qualifying school; (2) his appellate counsel also performed deficiently by not raising the trial court's instructional error in his prior appeal in this case; and (3) the deficient performance of his trial counsel and appellate counsel prejudiced him. Because we agree with Mendoza that the methamphetamine found hidden in his backyard was not in a "public area" within the meaning of section 11353.6, subdivision (g), we conclude he is entitled to the relief requested in his petition.

FACTUAL AND PROCEDURAL BACKGROUND

An information charged Mendoza with five counts, including possession for sale of a controlled substance (i.e., methamphetamine) in violation of section 11378. The information further alleged the section 11378 offense took place on the grounds, or

---

[1]     All statutory references are to the Health and Safety Code unless otherwise specified.

2

within 1,000 feet, of a public or private elementary, vocational, junior high, or high school within the meaning of section 11353.6, subdivision (b).

At trial, the prosecution presented evidence showing methamphetamine was found in the backyard of Mendoza's residence, hidden inside a large trash bag in a debris pile. Mendoza's residence was adjacent to a public elementary school. There was also evidence showing Mendoza's property was fenced in on three sides (i.e., along both its side property lines and back property line) and had two adult Rottweiler dogs secured in the backyard. Mendoza's defense theory was that a business associate named "Pelon" had placed the methamphetamine in his backyard.

The trial court instructed the jury on the section 11353.6, subdivision (b), allegation, stating:

> "If you find the defendant guilty of the crime charged in Count One, you must then decide whether the People have proved the additional allegation that the crime occurred within 1,000 feet of school grounds.
>
> "To prove this allegation, the People must prove that the location where defendant possessed methamphetamine for sale was within 1,000 feet of a public elementary school and defendant's possession for sale was during hours that the school was opened for classes or other school-related programs."

The jury found Mendoza guilty of the section 11378 offense and found true the section 11353.6, subdivision (b), allegation. The court sentenced him to a total term of 16 years in prison, including a consecutive four-year enhancement for the true finding on the section 11353.6, subdivision (b), allegation.

On appeal, Mendoza's appellate counsel argued only that the trial court erred by selecting the upper term for his section 11378 conviction.  (*People v. Mendoza* (Aug. 20, 2014, D064557) [nonpub. opn.].)  We concluded the court did not so err and affirmed the judgment.  (*Ibid.*)

On March 3, 2015, Mendoza and the People filed a stipulated motion to correct an unauthorized sentence.  In support of that motion, Mark Johnson, Mendoza's appellate counsel, and Matthew Tag, on behalf of the San Diego County District Attorney, stipulated to certain relevant evidence presented at trial, including:

> "[Mendoza's] house had a front door facing the street, a driveway on the left side of the property, and a three-and-one-half-foot tall fence around the perimeter of the front yard.  There was an open dirt lot between the residence and the elementary school next door, which was in session when the search was conducted.
>
> "[Mendoza] worked as an independent stucco and cement contractor and kept equipment and materials in the back yard at his residence.  [Mendoza] employed three or four workers who at times picked things up from [his] back yard.
>
> "The backyard also contained some vehicles, a rusted out old trailer full of debris, a debris pile, an empty swimming pool, and a cement mixer.  The yard was muddy and there were weeds growing all over.  There was rubble everywhere.  There were two large Rottweiler dogs on the property that were secured in the back of the house.  The dogs were not friendly.
>
> "Officers found four bags of methamphetamine in a debris pile in the back yard.  The methamphetamine was in a large trash bag that also contained a dirty old tarp and an industrial-sized sprayer."

At the time of Mendoza's trial, his trial counsel, the prosecutor, and the trial court were all unaware of section 11353.6, subdivision (g)'s definition of "within 1,000 feet of any public or private elementary . . . school," which includes the requirement that the location

4

at which the offense occurred be a "public area." Accordingly, the court did not instruct the jury of section 11353.6, subdivision (g)'s definition. Mendoza's appellate counsel and the prosecutor stipulated there was no evidence from which the jury could have found Mendoza's residence (presumably referring to the backyard location of the methamphetamine) was a "public area." Because there was no evidence Mendoza possessed methamphetamine within 1,000 feet of a school, as that phrase is defined by section 11353.6, subdivision (g), Mendoza's appellate counsel and the prosecutor stipulated that the four-year enhancement imposed under section 11353.6, subdivision (b), was unauthorized and should be stricken as not lawfully imposed.

The trial court denied the stipulated motion to correct an unauthorized sentence, stating that, although the prosecution had stipulated to the motion, the four-year enhancement imposed under section 11353.6, subdivision (b), was not unauthorized within the meaning of *People v. Scott* (1994) 9 Cal.4th 331. The court stated the proper method to obtain relief for the purported error was to file a petition for writ of habeas corpus in the trial court.

On April 8, 2015, Mendoza filed a petition for writ of habeas corpus in the trial court, again arguing the four-year enhancement under section 11353.6, subdivision (b), should be stricken as an unauthorized sentence. Concluding the purported error was most properly construed as a claim of ineffective assistance of counsel, the trial court issued an order to show cause why Mendoza should not be granted the relief requested in the petition.

Julianne Reizen, on behalf of the San Diego County District Attorney, filed a return to the order to show cause, abandoning the prosecution's previous position and arguing the petition should be denied because the location at which the methamphetamine was found was, in fact, a "public area" within the meaning of section 11353.6, subdivision (g), based on evidence showing the public had access to that area in Mendoza's backyard. Mendoza filed a denial, opposing the prosecution's arguments.

Concluding there was a factual dispute whether Mendoza's trial counsel was ineffective for not requesting a jury instruction on the "public area" requirement of section 11353.6, subdivision (g), and not arguing the portion of the backyard where the methamphetamine was found was not a public area, the trial court issued an order for an evidentiary hearing. The court thereafter conducted an evidentiary hearing during which it heard the testimony of San Diego County Deputy District Attorneys Matthew Tag and Clayton Carr and Mendoza's trial counsel, Christopher Kelley.

On October 13, 2015, following the evidentiary hearing and consideration of the trial evidence, the trial court issued an order denying the petition for writ of habeas corpus. Citing *People v. Jimenez* (1995) 33 Cal.App.4th 54 (*Jimenez*), the court concluded it was not reasonably probable the jury would have not found the enhancement true even had it been correctly instructed on section 11353.6, subdivision (g)'s definition because the evidence showed the backyard was readily accessible to the public. The court stated:

> "[T]he trial court record, including photographs of the portion of the
> backyard where the drugs were secreted, establish that the backyard
> was readily accessible to the public, specifically school children.

6

The backyard was surrounded by a chain link fence, but a dirt driveway leading into the backyard was not fenced nor gated and was open to passersby. The fence surrounding the yard provided no visual obstruction to the pile of debris, which was easily visible in the yard through and over the top of the fence. The backyard also backed up to the school and the backyard was entirely viewable from the school grounds. . . . It is not reasonably probable that at least one juror would have been swayed by the argument that the drugs were not readily accessible to the public in their location in the backyard. Therefore, failure to argue the public area exception and request the instruction did not prejudice [Mendoza] under the circumstances."

The court therefore concluded Mendoza was not denied effective assistance of counsel at trial. The court further concluded Mendoza was not denied effective assistance of counsel on appeal because there was no prejudice shown.

On December 10, 2015, Mendoza filed the instant petition for writ of habeas corpus. In support of his petition, he submitted various exhibits, including the trial court record. The People filed an informal response and Mendoza filed a reply. In its informal response, the People requested we take judicial notice of the record on appeal in *People v. Mendoza* (Aug. 20, 2014, D064557) [nonpub. opn.]. We hereby grant that request for judicial notice. We issued an order to show cause (OSC) why the relief requested in the petition should not be granted. Because neither party timely objected, we deem the response and reply to be the return and traverse to the OSC.

DISCUSSION

I

*Ineffective Assistance of Counsel Generally*

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466

7

U.S. 668, 684-685 (*Strickland*); *People v. Pope* (1979) 23 Cal.3d 412, 422, disapproved on another ground by *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)  To show denial of the right to counsel, a defendant must show: (1) his or her counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defendant. (*Strickland,* at pp. 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 (*Ledesma*); *Pope*, at p. 425.)  To show prejudice, a defendant must show there is a reasonable probability that he or she would have received a more favorable result had his or her counsel's performance not been deficient.  (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.)  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt."  (*Strickland*, at p. 695.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*People v. Williams* (1997) 16 Cal.4th 153, 215 (*Williams*).)  It is the defendant's burden to show that he or she was denied effective assistance of counsel and is entitled to relief. (*Ledesma*, at p. 218.)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions.  [Citations.] . . . Accordingly, a reviewing court will reverse a conviction on the ground of inadequate counsel 'only if the record on appeal affirmatively discloses that

8

counsel had no rational tactical purpose for his act or omission.' " (*People v. Frye* (1998) 18 Cal.4th 894, 979-980 (*Frye*).)

## II

*Section 11353.6, Subdivisions (b) and (g)*

*The Act.* Section 11353.6, enacted in 1988, is known as the Juvenile Drug Trafficking and Schoolyard Act of 1988 (Act). (§ 11353.6, subd. (a); Stats. 1988, ch. 1248, § 1.) Section 11353.6, subdivision (b), provides in pertinent part:

> "Any person 18 years of age or over who is convicted of a violation of . . . Section 11378 . . . , where the violation takes place upon the grounds of, or *within 1,000 feet of*, a public or private elementary, vocational, junior high, or high *school* during hours that the school is open for classes or school-related programs, or at any times when minors are using the facility where the offense occurs, shall receive an additional punishment of three, four, or five years at the court's discretion." (Italics added.)

Effective in 1993, the Act was amended to add subdivision (g), which provides:

> " 'Within 1,000 feet of a public or private elementary, vocational, junior high, or high school' means any *public area* or business establishment where minors are legally permitted to conduct business which is located within 1,000 feet of any public or private elementary, vocational, junior high, or high school." (§ 11353.6, subd. (g), italics added; Stats. 1992, ch. 989, § 1.)

*Jimenez.* In 1995, *Jimenez* construed the term "public area," as used in section 11353.6, subdivision (g), by considering its language, purpose and legislative intent, and analogous case law construing the term "public place," as used in Penal Code section 647. (*Jimenez*, *supra*, 33 Cal.App.4th at pp. 58-60.) In that case, officers observed the defendant sell rock cocaine to another man while standing in a residential driveway that was within 1,000 feet of an elementary school. (*Id*. at pp. 56-57.) At trial, the jury found

9

the defendant guilty of the primary offense (i.e., § 11352, subd. (a)) and found true the related section 11353.6, subdivision (b), allegation. (*Jimenez*, at p. 57.) On appeal, the defendant contended his section 11353.6, subdivision (b), enhancement should be reversed because the trial court did not instruct the jury on section 11353.6, subdivision (g)'s definition of "within 1,000 feet of a public or private . . . school." (*Jimenez*, at p. 57.) He argued that, as a matter of law, a private driveway is not a "public area" within the meaning of section 11353.6, subdivision (g). (*Jimenez*, at p. 57.)

Citing *People v. Williams* (1992) 10 Cal.App.4th 1389, *Jimenez* noted that *before* the 1993 amendment to the Act that added section 11353.6, subdivision (g), the Act's enhancement applied even if the sale occurred in the bedroom of a private residence. (*Jimenez*, *supra*, 33 Cal.App.4th at p. 58.) As of 1993, "the Legislature expanded the list of underlying offenses subject to the enhancement but limited the circumstances under which the enhancement could apply." (*Ibid*.) The Legislature added subdivision (g), "which provided the enhancement could no longer be imposed for drug offenses occurring within 1,000 feet of a school unless it was proven the offense took place in a 'public area or business establishment were minors are legally permitted to conduct business.' " (*Jimenez*, at p. 58.) However, the term "public area" is not defined in the Act. (*Ibid*.) *Jimenez* noted *People v. Todd* (1994) 30 Cal.App.4th 1724, the only prior published case construing section 11353.6, subdivision (g), held the Act's enhancement no longer applied to drug sales that occurred in private residences and *Jimenez* agreed with that construction of the term "public area." (*Jimenez*, at p. 58.)

10

*Jimenez* considered the legislative intent underlying the 1993 amendments to the Act, stating those amendments represented "a change in focus away from attempting to create a 'drug-free zone' around schools, focusing instead on preventing the sale of drugs to students on their way to and from school and, equally important, protecting them from exposure to drug dealers and drug buyers so they will not be influenced to emulate the conduct of either." (*Jimenez*, *supra*, 33 Cal.App.4th at p. 59.) It stated: "[S]ection 11353.6, subdivision (g) recognizes drug transactions carried out in private or in places where minors are not lawfully present, such as bars, nightclubs and adult bookstores, do not expose minors to drug trafficking to the same degree as transactions carried out in places children are likely to congregate before, during and after school such as streets, sidewalks, and bus stops." (*Ibid*., fn. omitted.)[2]

*Jimenez* did *not* construe "public area," as used in section 11353.6, subdivision (g), as synonymous with public property, noting that the term "public place," as used in Penal Code section 647, is not synonymous with public property, but instead means " 'an area where a member of the public may be lawfully present.' "[3] (*Jimenez, supra*, 33

---

[2]     *Jimenez*, like *People v. Todd*, *supra*, 30 Cal.App.4th at page 1729, construed the phrase "where minors are legally permitted to conduct business," as used in section 11353.6, subdivision (g), as modifying the term "business establishment" and not the term "public area." (*Jimenez*, *supra*, 33 Cal.App.4th at p. 59, fn. 2.)

[3]     Penal Code section 647 provides in pertinent part: "[E]very person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶] . . . [¶] (f) [w]ho is found in any *public place* under the influence of intoxicating liquor . . . in a condition that he or she is unable to exercise care for his or her own safety or the safety of others . . . ." (Italics added.)

11

Cal.App.4th at pp. 59-60.)  In particular, *Jimenez* cited *People v. Olson* (1971) 18 Cal.App.3d 592, which held that the term "public place" under Penal Code section 647 included the front yard of a private residence in the circumstances of that case.  (*Jimenez*, at p. 60.)  *Jimenez* concluded:

> "Given the purpose of section 11353.6 to shield students not only from direct contact with drug dealers but from exposure to drug transactions, we believe the term 'public area' should be construed to include publicly owned locations such as streets, sidewalks and bus stops as well as those portions of private property which are readily accessible to the public.  (Cf. *People v. Perez* [(1976) 64 Cal.App.3d 297, 301], defining 'public place' as 'a location readily accessible to all those who wish to go there . . . .')"  (*Jimenez*, *supra*, 33 Cal.App.4th at p. 60.)

*Jimenez* concluded the term "public area," as used in section 11353.6, subdivision (g), includes private driveways, noting "[d]riveways are areas students may pass by or through on their way to and from school, are generally exposed to public view and are generally accessible to persons making deliveries, service calls, and solicitations and engaging in various errands."  (*Jimenez*, *supra*, 33 Cal.App.4th at p. 60, fn. omitted.)

*Jimenez* concluded the trial court erred by not instructing the jury to determine whether the private driveway in which the drug sale took place was a public area under section 11353.6, subdivision (g), but found that error was harmless beyond a reasonable doubt and did not require reversal of the judgment.  (*Jimenez*, *supra*, 33 Cal.App.4th at p. 62.)  The court stated: "Even if the 'public area' issue had been submitted to the jury, from the evidence in the record the jury could not have come to any conclusion other than that the driveway was a public area. . . .  Defendant and [the other man] were standing approximately 20 feet up the driveway when the sale took place.  There was no gate,

12

guard dog or other impediment to public access. The officers testified they had an unobstructed view of the sale from across the street." (*Ibid*.) Accordingly, *Jimenez* affirmed the judgment. (*Id*. at p. 63.)

III

*Deficient Performance of Mendoza's Counsel*

Mendoza asserts his trial counsel performed deficiently by not requesting the trial court to instruct on section 11353.6, subdivision (g)'s definition and presenting a defense to the section 11353.6, subdivision (b), allegation by showing and/or arguing that the area in Mendoza's backyard where the methamphetamine was found was not a "public area" within the meaning of that statute. He also asserts his appellate counsel performed deficiently by not raising in his appeal the trial court's instructional error and insufficiency of the evidence to support the true finding on the section 11353.6, subdivision (g), allegation.

*Trial counsel*. The record shows Kelley, Mendoza's trial counsel, was unaware of section 11353.6, subdivision (g)'s definition during trial and did not request the trial court to instruct the jury on that definition and instruct the jury that it must determine whether the location in Mendoza's backyard where the methamphetamine was found was a "public area" within the meaning of that statute. During the evidentiary hearing on Mendoza's petition for writ of habeas corpus filed in the trial court, Kelley testified that during trial he was unaware of section 11353.6, subdivision (g)'s definition and did not request that the court instruct on that definition. "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his

13

failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled." (*People v. Ibarra* (1963) 60 Cal.2d 460, 464.) Based on our review of the record, it is clear Mendoza's trial counsel did not adequately investigate all defenses Mendoza had to the section 11353.6, subdivision (b), allegation. Had he done so he would have learned of section 11353.6, subdivision (g)'s definition. Furthermore, based on his knowledge of the facts, he would have become aware that Mendoza had a viable defense to that allegation based on the argument that the area where the methamphetamine was found in his backyard was not a "public area" within the meaning of subdivision (g). In support of that defense, his trial counsel should have requested an instruction on section 11353.6, subdivision (g)'s definition. Because he was unaware of the subdivision (g) definition during trial, Mendoza's trial counsel could not have made any tactical decision, rational or otherwise, not to raise that defense or request that instruction. (Cf. *People v. Ibarra*, *supra*, 60 Cal.2d at pp. 465-466 [failure to research applicable law precluded exercise of judgment/trial tactics].)

Contrary to the People's assertion, Mendoza's defense to the primary charge of possession for sale was not necessarily inconsistent with, and did not preclude, a defense to the section 11353.6, subdivision (b), allegation based on the absence of evidence showing his backyard was a "public area." As Kelley testified, Mendoza's defense to the primary charge of possession for sale was not that a stranger placed the drugs on his property, but that a man named "Pelon" did. Mendoza had apparently contemplated going into business with Pelon, which business would involve the buying of cars, repairing them on Mendoza's property, and then selling them. By asserting that defense

14

at trial and implicitly or expressly arguing Pelon had access to his backyard, Mendoza did not preclude a defense to the related section 11353.6, subdivision (b), allegation by arguing his backyard was not a "public area" within the meaning of section 11353.6, subdivision (g). We conclude that by not adequately investigating and arguing all defenses Mendoza had to the subdivision (b) allegation and not requesting an instruction on subdivision (g)'s definition, Mendoza's trial counsel performed deficiently. (*Strickland*, *supra*, 466 U.S. at pp. 687, 691-692; *Frye*, *supra*, 18 Cal.4th at pp. 979-980.)

*Appellate counsel*. The record shows Johnson, Mendoza's appellate counsel, was unaware of section 11353.6, subdivision (g)'s definition during Mendoza's appeal and failed to raise that issue on appeal. During the evidentiary hearing, the parties stipulated that if Johnson were called to testify he would testify that he did not raise an issue about subdivision (g) because he was not aware of its specialized definition. Furthermore, had he been aware of that definition he would have raised that issue in the appellant's opening brief he filed on Mendoza's behalf. Although the parties' stipulation does not so specify, we presume that, had Johnson raised that issue, he would have specifically asserted instructional error based on the trial court's failure to instruct on subdivision (g)'s definition, insufficiency of the evidence to support the true finding on the subdivision (b) allegation, and/or ineffective assistance of trial counsel for failure to adequately investigate all defenses to that allegation, request an instruction on subdivision (g)'s definition, and argue in closing the evidence did not support a finding that the area where the methamphetamine was found in Mendoza's backyard was not a "public area" within the meaning of that definition. Because he was unaware of the subdivision (g) definition

15

during the appeal, Mendoza's appellate counsel could not have made any tactical decision, rational or otherwise, not to raise those issues on appeal. (Cf. *People v. Ibarra*, *supra*, 60 Cal.2d at pp. 465-466 [failure to research applicable law precluded exercise of judgment/trial tactics].) By not adequately researching section 11353.6 and not raising the above issues involving subdivision (g)'s definition, Mendoza's appellate counsel performed deficiently. (*Strickland*, *supra*, 466 U.S. at pp. 687, 691-692; *Frye*, *supra*, 18 Cal.4th at pp. 979-980; *In re Smith* (1970) 3 Cal.3d 192, 202-203 [counsel's failure to raise crucial assignment of error on appeal is deficient performance].)

IV

*Prejudice*

Mendoza contends he was prejudiced by the deficient performance of his trial and appellate counsel. Based on our construction of the term "public area," as used in section 11353.6, subdivision (g), and consideration of the circumstances in this case, we agree.

A

*"Public area."* As discussed above, *Jimenez* construed the term "public area," as used in section 11353.6, subdivision (g), as including "publicly owned locations such as streets, sidewalks and bus stops as well as those portions of private property which are *readily accessible to the public*." (*Jimenez*, *supra*, 33 Cal.App.4th at p. 60, italics added.) In so doing, *Jimenez* relied, in part, on analogous cases construing a similar term, "public place," as used in Penal Code section 647, as meaning " 'an area where a member of the public may be lawfully present.' " (*Jimenez*, at p. 60.) Applying its construction of the term "public area" to the circumstances in that case, *Jimenez* concluded the private

16

driveway in that case was a "public area" within the meaning of section 11353.6, subdivision (g), reasoning that "[d]riveways are areas students may pass by or through on their way to and from school, are generally exposed to public view and are generally accessible to persons making deliveries, service calls, and solicitations and engaging in various emails." (*Jimenez*, at p. 60, fn. omitted.)

Although we agree with and adopt *Jimenez*'s general construction of the term "public area," as used in section 11353.6, subdivision (g), we believe further construction of that term is required to answer the question of whether, in general, the backyard of a private single family residence is such a "public area." We have not found, nor have the parties cited, any published case addressing the question of whether a backyard of a private single family residence is a "public area" within the meaning of section 11353.6, subdivision (g), or a "public place" within the meaning of Penal Code section 647. Although the determination of whether a particular location is a "public area" or "public place" necessarily depends on the facts of each individual case (*People v. Cruz* (2008) 44 Cal.4th 636, 674 [regarding "public place" under Pen. Code, § 647, subd. (f)]), our examination of analogous case law leads us to recognize a general rule that should be applied in the circumstances of this case—namely, that the backyard of a private single family residence is, in general, *not* a "public area" within the meaning of section 11353.6, subdivision (g).

*Jimenez* concluded that in the circumstances of its case the private driveway was a "public area" within the meaning of section 11353.6, subdivision (g). (*Jimenez*, *supra*, 33 Cal.App.4th at pp. 62; cf. *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 319 [trial

17

court properly instructed that a private driveway could be a "public place" within the meaning of Pen. Code, former § 12031 if it is reasonably accessible to the public without a barrier].) In *Jimenez*, the crime occurred about "20 feet up the driveway" (presumably measuring from a public sidewalk or street); there was no gate, guard dog, or other impediment to public access; and the officers had an unobstructed view of the crime from across the street. (*Jimenez*, at p. 62.) Although *Jimenez* did not expressly so state, it can be reasonably inferred that the private driveway in that case was in front of the house and adjacent to, or part of, its front yard. Therefore, a location on a private driveway in front of a private residence about 20 feet from a public sidewalk or street is generally a "public area" within the meaning of section 11353.6, subdivision (g).

In contrast, case law holds that a private residence itself is not a "public area" within the meaning of section 11353.6, subdivision (g). (*Jimenez*, *supra*, 33 Cal.App.4th at p. 58; *People v. Todd*, *supra*, 30 Cal.App.4th at p. 1729.) Furthermore, the front yard of a private residence may, or may not, be a "public area" depending on the circumstances in a particular case. In *People v. Marzet* (1997) 57 Cal.App.4th 329, at page 339, the court concluded there was no reasonable doubt that, had the trial court instructed the jury on section 11353.6, subdivision (g)'s definition, the jury would have found the area in front of a house and on a public street where the drug offense was committed to be a "public area" within the meaning of that statute. In an analogous Penal Code section 647 case, *People v. Olson*, *supra*, 18 Cal.App.3d 592 concluded the front area outside a private residence in that case was a "public place" within the meaning of Penal Code section 647 because a stranger was able to walk through the front outside

18

area of the defendant's home to the front door without challenge and that area was open to common or general use. (*Id*. at p. 598.) In contrast, in *People v. White* (1991) 227 Cal.App.3d 886, the court concluded the front yard of a private residence in that case was not a "public place" within the meaning of Penal Code section 647 because it was surrounded by a three-and-a-half-foot high fence with a closed, but unlocked, gate and contained three dogs released by the defendant, all of which circumstances provided challenge to public access. (*White,* at p. 892.)

Importantly, we note that *In re R.K.* (2008) 160 Cal.App.4th 1615 concluded an open woodshed located in a side yard of a private residence was not a "public place" within the meaning of Penal Code section 647. (*In re R.K.,* at pp. 1621-1622.) Citing the definitions of "public place" provided by *Olson* and *White*, *In re R.K.* stated there was no evidence the woodshed in the side yard was open to common or general use, unlike areas outside the front of a home that are open to delivery persons, solicitors, visitors, and other strangers for access to the front door. (*Ibid*.) The court concluded there was a "qualitative difference between a woodshed at the side of a house and areas outside of the front of a house such as driveways, lawns, or front porches." (*Id*. at p. 1621.) The court stated the absence of doors on the woodshed or the lack of fences, gates, or dogs adjacent to the area where the woodshed was located was irrelevant to its determination that the area was not a "public place." (*Ibid*.) It reasoned: "[A] *woodshed located* 10 to 15 feet *to the side of a house needs no barrier to establish that it is not open to common or general use*." (*Id*. at p. 1622, italics added.)

19

Applying the above principles and reasoning to the circumstances in this case, we conclude Mendoza's backyard and the area where the methamphetamine was hidden was not a "public area" within the meaning of section 11353.6, subdivision (g). The evidence shows Mendoza's backyard was fenced on three sides (i.e., along both side property lines and the back property line). His house had a front door facing the street and a driveway that began at the street and continued along the left side of the house. There were two Rottweiler dogs secured in the backyard. Based on that evidence, it cannot be reasonably inferred that the area where the methamphetamine was found in Mendoza's backyard was a "public area" within the meaning of section 11353.6, subdivision (g). Unlike driveways and front lawns and porches, his backyard was not an area open for common or general use by delivery persons, solicitors, visitors, and other strangers for access to the front door. (Cf. *In re R.K.*, *supra*, 160 Cal.App.4th at pp. 1621-1622 [woodshed in side yard is not an area open to common or general use]; *Jimenez*, *supra*, 33 Cal.App.4th at pp. 59-60 [driveways are generally accessible to members of the public who may lawfully be there to make deliveries, service calls, and solicitations and engage in various errands]; *People v. Olson*, *supra*, 18 Cal.App.3d at p. 598 [area in front of house was "public place" because a stranger could walk through it to front door without challenge and thus was open to common or general use].) There is no evidence in the record to support a reasonable inference that members of the public, such as strangers, could lawfully access Mendoza's backyard to make deliveries or service calls or perform other errands. The fact that three or four employees of Mendoza's stucco business could, and did, access his backyard to get equipment and material did *not* make his backyard open for general

20

access by members of the public who may lawfully be present there or otherwise make it readily accessible to the public. (*Jimenez*, at pp. 59-60.)

Furthermore, the fact that students at the adjacent elementary school could view Mendoza's backyard through a chain link fence did not make it readily accessible to the public. The ability of students or other members of the public to view private property does not make it readily, or lawfully, accessible to the public. (*In re Koehne* (1963) 59 Cal.2d 646, 649 [exposure to public view does not make area a "public place" within meaning of Pen. Code, § 647, subd. (f)].) In the 50 years since Penal Code section 647, subdivision (f), was enacted using the term "public place," there has been no published case that addresses the issue of whether a backyard of a private residence is a "public place" within the meaning of that statute. More importantly, in the 20 years since section 11353.6, subdivision (g), was enacted using the term "public area," there has been no published case that addresses the issue of whether, much less concludes, a backyard of a private residence is a "public area" within the meaning of section 11353.6, subdivision (g). The lack of any published case law for decades since enactment of those statutes may very well be due to the considered judgment of prosecutors and trial courts in previous cases that section 11353.6, subdivisions (b) and (g), and Penal Code section 647, subdivision (f), do not, and should not, apply to offenses committed in the backyard of a private residence. Based on the circumstances in this case, we believe Mendoza's backyard was not, in fact, a "public area" within the meaning of section 11353.6, subdivision (g), and decline the People's invitation to become the first court to extend the concept of a "public area" (or "public place") to the backyard of a private residence.

21

Contrary to the People's assertion, there is nothing in the purpose or legislative history of section 11353.6, subdivisions (b) and (g), that persuades us to conclude Mendoza's backyard was a "public area" within the meaning of that statute. *Jimenez* noted the purpose of section 11353.6 was to shield students not only from direct contact with drug dealers but from exposure to drug transactions. (*Jimenez*, *supra*, 33 Cal.App.4th at p. 60.) Construing the term "public area" as an area readily accessible to the public, *Jimenez* concluded that term included private driveways and noted "[d]riveways are areas students may pass by or through on their way to and from school, are generally exposed to public view and are generally accessible to persons making deliveries, service calls, and solicitations and engaging in various errands." (*Jimenez*, *supra*, 33 Cal.App.4th at p. 60, fn. omitted.) Therefore, the Act seeks to limit the exposure of students to drug dealers and drug transactions by imposing prison enhancements for defendants convicted of committing certain offenses in a "public area" within 1,000 feet of a school. In the circumstances of this case, where the methamphetamine was hidden in a trash bag in the backyard of Mendoza's private residence, we cannot conclude the term "public area," as used in section 11353.6, subdivision (g), can, or should, be construed so expansively that it would include any area subject to viewing by students or other members of the public. Furthermore, students going to and from the adjacent school were not exposed to any drug transactions because the methamphetamine was simply hidden in a trash bag in Mendoza's backyard. Accordingly, neither the language, purpose, nor legislative intent of section 11353.6,

subdivisions (b) and (g), supports the People's proposed expansive construction of the term "public area."

B

Because, based on our consideration of the record in this case, we conclude the area where the methamphetamine was found in Mendoza's backyard was not a "public area" within the meaning of section 11353.6, subdivision (g), Mendoza was necessarily prejudiced by his trial counsel's deficient performance in failing to adequately investigate and argue all defenses he had to the section 11353.6, subdivision (b), allegation and request an instruction on subdivision (g)'s definition. Applying the applicable standard of prejudice, we conclude it is reasonably probable Mendoza would have obtained a more favorable result had his trial counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.) Had his trial counsel adequately investigated all defenses to the subdivision (b) allegation, he would have become aware of, and requested an instruction on, subdivision (g)'s definition and argued that Mendoza's backyard was not a "public area" within the meaning of that definition. Furthermore, based on our consideration of the record, it is reasonably probable that if the jury was so instructed, it would have found the subdivision (b) allegation to be not true. Contrary to the trial court's belief, we conclude at least one juror would have had a reasonable doubt whether the area where the methamphetamine was found in Mendoza's backyard was a "public area" within the meaning of subdivision (g). Alternatively stated, the deficient performance of Mendoza's trial counsel has

23

undermined our confidence in the outcome of his trial.  (*Williams*, *supra*, 16 Cal.4th at p. 215.)

Likewise, we conclude Mendoza was also necessarily prejudiced by his appellate counsel's deficient performance by not adequately researching the section 11353.6, subdivision (b), allegation and not asserting on appeal instructional error based on the trial court's failure to instruct on section 11353.6, subdivision (g)'s definition, insufficiency of the evidence to support the jury's true finding on the subdivision (b) allegation, and/or ineffective assistance of trial counsel for failure to adequately investigate all defenses to that allegation, request such an instruction, and argue in closing that the evidence did not support a finding that the area where the methamphetamine was found in Mendoza's backyard was not a "public area" within the meaning of that definition.  It is reasonably probable that had Mendoza's appellate counsel not performed deficiently, he would have obtained a more favorable result on appeal (i.e., the true finding on the § 11353. subd. (b), allegation probably would have been reversed).  (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)  Alternatively stated, the deficient performance of Mendoza's appellate counsel has undermined our confidence in the outcome of his case.  (*Williams*, *supra*, 16 Cal.4th at p. 215.)

## DISPOSITION

The superior court is ordered to: (1) vacate the true finding on the section 11353.6, subdivision (b), allegation; (2) enter an amended judgment sentencing Mendoza to an aggregate prison term of 12 years; (3) issue an amended abstract of judgment reflecting

24

the amended judgment; and (4) forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.  Pursuant to California Rules of Court, rule 8.387(b)(3)(A), this opinion shall be final as to this court five days after its filing.

McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.